IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BIJAN FARHANGUI,**<br>**Plaintiff,**<br><br>v.<br><br>**DOUGLAS R. GROSSINGER,**<br>**Defendant.** | CIVIL ACTION<br><br><br><br><br>NO.  20-2002 |

## MEMORANDUM

Before this Court for the second time are claims arising from two contracts between Douglas Grossinger and Bijan Farhangui, in which Grossinger borrowed a total of $100,000 from Farhangui ("the Agreements").[1]  Grossinger, a lawyer, wanted the loans to fund his work on a complex litigation matter.  The interest rate on the loans was 100%, and, accordingly, each contract required Grossinger to repay twice the amount loaned—for a total of $200,000—to Farhangui by April 2019.  The Agreements further provided that "[i]f Grossinger defaults on his obligations . . . by failing to make timely repayment, [] additional interest shall accrue at a rate of 10% per month, or the maximum legally-allowable rate of interest, whichever is lower."  Grossinger defaulted after repaying $85,000, and Farhangui demanded immediate repayment of the debt.  Although the contract does not include a provision regarding whether the late payment interest should be calculated based on the principal balance of the loan each month (simple interest) or on the principal balance plus any outstanding interest accrued at each previous calculation period (compound interest), Farhangui used a compound interest calculation to determine that Grossinger owed him $323,300.29.  Additionally, Farhangui calculated that

---

[1] The two contracts in dispute were attached to the Complaint.  Given so, and as they are integral to the claims, they shall be considered on this motion to dismiss.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal citation and quotation omitted).

1

Grossinger would owe him $1,048,538.64 if payment was not made by December 31, 2020.

In response, Grossinger sued Farhangui for usury under Pennsylvania's Loan Interest and Protection Law, 41 Pa. C.S.A. § 101 *et seq.* ("LIPL"), and for unjust enrichment. Farhangui filed a motion to dismiss, which was granted, and the claims were dismissed with prejudice. *See Grossinger v. Farhangui*, 2020 WL 4334902 (E.D. Pa. July 28, 2020). The usury claim was rejected because the loan was for business purposes, and thus the LIPL does not apply. *Id.* at *1. And because there was an express contract in place, the unjust enrichment claim also failed. *Id*.

That was not, however, the end of what both parties describe as a simple case. Before the Court decided Farhangui's motion to dismiss Grossinger's Complaint, Farhangui filed an independent lawsuit, which was consolidated with the initial suit, based on the same Agreements, alleging breach of contract and unjust enrichment against Grossinger. Grossinger answered and filed six counterclaims—on top of the claims brought in his initial suit. Specifically, Grossinger now brings claims for fraudulent concealment; fraudulent inducement; fraudulent misrepresentation; negligent misrepresentation; and breach of the implied covenant of good faith and fair dealing; he also seeks a declaratory judgment. Farhangui, again, moves to dismiss all six counterclaims.

## I. **LEGAL STANDARDS**

Generally, to survive a motion to dismiss, a claim must simply contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). Factual allegations are separated from mere legal conclusions and recitations of the element of the claim, as legal conclusions are not sufficient to state a plausible claim. *Id.* However, where, as here, there are allegations of fraud, a heightened pleading standard applies to those claims. *See* Fed. R. Civ. P. 9(b). Rule 9(b) is a

"stringent pleading restriction[]." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d. Cir. 2007). The alleged fraud must be pleaded with "particularity," *Lum v. Bank of America,* 361 F.3d 217, 223 (3d Cir. 2004), and to do so, the claimant "*must* plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation," *Frederico*, 507 F.3d at 200 (emphasis added). This heightened standard exists "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Lum*, 361 F.3d at 223-24.

## II.   DISCUSSION

### A. Fraudulent Concealment

Grossinger first alleges that "Farhangui intentionally concealed the fact that he purposely drafted the terms of the Agreements to be ambiguous so that he could later misconstrue the terms [to] take advantage of Grossinger by charging him an endless compounding interest." Fraudulent concealment in Pennsylvania is governed by Section 550 of the Restatement (Second) of Torts, which provides that a "party to a transaction who by concealment or other action *intentionally prevents the other from acquiring material information*" is liable for the loss the other party incurred as a result of the concealment (emphasis added).[2] *See also Roberts v. Estate of Barbagallo*, 531 A.2d 1125, 1130 (Pa. Super. 1987). Although Grossinger alleges that the

---

[2] Farhangui construed Grossinger's Counterclaim to raise a fraudulent nondisclosure claim, which is governed by Section 551 of the Restatement (Second) of Torts. In his Response in Opposition, Grossinger maintains that he could meet that standard as well. But fraudulent nondisclosure is a narrow tort that applies "to a business transaction only when [a party] has a duty to speak." *Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604, 611 (3d Cir. 1995). It is well settled under Pennsylvania law that it does not apply when, as here, "the two parties are sophisticated business entities, with equal and ample access to legal representation." *Id.* at 612. To overcome this limitation, Grossinger makes conclusory allegations that Farhangui was in a "substantially stronger bargaining position." Such an allegation does not suffice to plausibly allege any type of special relationship giving rise to a requirement to disclose information.

interest provision was ambiguous—and intentionally drafted to be ambiguous by Farhangui—he makes no allegations of any steps taken by Farhangui to *intentionally prevent* Grossinger from noting this ambiguity.  Both parties to the contract were sophisticated and dealing at arm's length—indeed, Grossinger himself is an attorney who sought this money to support his involvement with a complex litigation matter.  Nothing in the Counterclaim suggests any actions taken by Farhangui to *prevent* Grossinger from realizing there was an ambiguity in the contract, nor does it contain allegations related to the "date, time and place" of such actions, *Frederico*, 507 F.3d at 200; that Grossinger himself did not identify this potential ambiguity does not mean Farhangui's actions were fraudulent.  Grossinger thus fails to meet the "stringent" Rule 9(b) pleading requirement and his claim shall be dismissed.  *Id.*

> B. **Fraudulent Inducement, Fraudulent Misrepresentation, and Negligent Misrepresentation**

Grossinger next argues that Farhangui fraudulently induced him into signing the contract, and fraudulently or negligently[3] misrepresented the terms of the contract.  In order for any of these three claims to be viable, Grossinger must allege facts to plausibly establish that Farhangui made some type of false, misleading statement.  *See Tunis Bros. Co. v. Ford Motor Co.*, 952 F.2d 715, 731 (3d Cir. 1991) (noting that a fraudulent misrepresentation claim requires plaintiff to show a "fraudulent utterance"); *In Re Allegheny Int'l, Inc.*, 954 F.2d 167, 178 (3d Cir. 1992) (noting that fraudulent inducement has the same standards as misrepresentation, but with the additional element that the "misrepresentation was made with the specific intent to induce another to enter into a contract"); *Gibbs v. Ernst*, 647 A.2d 882, 890 (Pa. 1994) (noting that

---

[3] Courts are split as to whether Rule 9(b)'s heightened pleading standard applies to negligent misrepresentation claims.  *See Bors v. Johnson & Johnson*, 208 F. Supp.3d 648, 656 (E.D. Pa. 2016) (citing *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272 (3d Cir. 1992)).  Because the Court concludes that Grossinger failed to allege *any* non-conclusory facts pertaining to a false misrepresentation by Farhangui, as required for negligent misrepresentation, his claim fails under either standard, and this issue need not be resolved.

4

negligent misrepresentation requires a "misrepresentation of material fact" when the speaker knew or "ought to have known of its falsity").

Grossinger's allegations pertaining to all three of these claims rest on the same basic premise as his fraudulent concealment claim: that Farhangui "purposefully omit[ed] his intention to gain excessive financial benefit by interpreting the agreements as giving him the power to charge Grossinger endless compounding interest." But even assuming Farhangui did, indeed, hide this intention and "omit[ted]" telling Grossinger about his own beliefs about how the contractual provisions would impact the amount of interest he owed, that does not give rise to a fraud or misrepresentation claim—it is well established that "mere silence is not sufficient in the absence of a duty to speak." *Duquesne*, 66 F.3d at 612. And as explained *supra*, Grossinger failed to plead any facts giving rise to such a duty here. *See also id.* (noting that there is no duty to speak when the parties are "sophisticated business entities, with equal and ample access to legal representation"). Nor does the simple fact that the contract may have been ambiguous as to the method for calculating interest suffice to indicate fraud or misrepresentation. *See Lum*, 361 F.3d at 226 (noting that *because* the "meaning of the term 'prime rate'" as used in the contract is "sufficiently indefinite that it is reasonable for the parties to have different understandings of its meaning," there was no fraud claim on the basis of how the term was interpreted); *Blount Fin. Serv. Inc. v. Walter E. Heller and Co.*, 819 F.2d 151, 152-53 (6th Cir. 1987) ("The fact that the parties take different positions under the contract as to the appropriate prime rate, or the fact that the defendant charged too high a 'prime rate' and thereby . . . refused to disclose what the plaintiff considers the true prime rate called for under the contract, does not give rise to a valid claim for fraud.").

Grossinger's Counterclaim contains no other plausible allegations, beyond silence and

ambiguity, to give rise to the reasonable inference that Farhangui made any false statements during the negotiation process, whether negligently or intentionally.  *See, e.g.*, *Lum*, 361 F.3d at 225 (holding that "mak[ing] general claims that defendants misrepresented that the prime rate is the lowest rate charged to their most creditworthy customers" does not satisfy the Rule 9(b) standard because "they do not indicate the date, time, or place of the alleged misrepresentations, the financial transactions in connection with which these misrepresentations were made, or who made the misrepresentation to whom"); *Frederico*, 507 F.3d at 200-01 (noting that "broad statements" about a company's "excessive 'late' fees," "failure to disclose lack of after-hours rental return facilities or procedures," and "false representation that 'vehicle rentals and late fees associated therewith would not accumulate beyond the time at which Plaintiff . . . attempted to return rented vehicles" do not provide the "substance of the misrepresentation" such as to state a claim); *Williamsburg Commons Condo. Ass'n v. State Farm Fire & Cas.*, 907 F. Supp.2d 673, 678 (E.D. Pa. 2012) (noting that plaintiff "points to no extraneous communications, materials, or efforts by State Farm to induce or coax it into signing the contract for the insurance policy").  As such, all three claims shall be dismissed.

    **C.  Covenant of Good Faith**

Grossinger next argues that, pursuant to an implied covenant of good faith, the contract must be interpreted to calculate interest using the simple, not compound method, so as to "enforce the Parties' Agreement in a way that is" consistent with "Grossinger's reasonable expectations."  The covenant of good faith is used as "an interpretive tool to determine the parties' justifiable expectations in the context of a breach of contract action."  *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 91 (3d Cir. 2000).  However, it cannot be "divorced from the specific clauses of the contract and cannot be used to override an express contractual

term." *Id.* And, most saliently, a "party is not entitled to maintain an implied duty of good faith claim where the allegations of bad faith are 'identical to' a claim for 'relief under an established cause of action.'" *Id.* at 92 (quoting *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 701-02 (3d Cir. 1993), abrogated on other grounds by *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392 (3d Cir. 2003)). That is because the covenant of good faith is "necessarily vague and amorphous," and without judicial limitations to its application, "every plaintiff would have an incentive to include bad faith allegations in every contract action." *Id.* Thus, when "other causes of action exist[] where the plaintiff could seek relief," no implied convent of good faith claim can lie. *Parkway Garage*, 5 F.3d at 701.

Here, Grossinger brings his good faith claim on the same basis as he brings his various fraud claims and his declaratory judgment claim (discussed *infra*), namely that the interest calculation term of the Agreements was ambiguous, and Farhangui misrepresented how it would be applied, so as to take advantage of Grossinger's lack of knowledge. "[I]f a plaintiff alleging a violation of the implied covenant of good faith also were to file a claim for fraud based on the same set of facts," then it is appropriate to "consider the other claims in the plaintiff's complaint," not the good faith claim. *Northview*, 227 F.3d at 92; *see also Parkway Garage*, 5 F.3d at 701 (rejecting covenant of good faith argument when the allegations underlying it were identical to the plaintiff's claims brought under 42 U.S.C. § 1983); *Standard Pipeline Coating Co. v. Solomon & Teslovich, Inc.*, 373, 496 A.2d 840, 843 (Pa. Super. 1985) (declining to create a tort remedy where there was an adequate remedy to address the claims in existing torts and contracts law). Because there is an express term in the contract governing interest, and Grossinger has brought other claims on the identical basis as his covenant of good faith claim, it shall thus be dismissed.

### D. Declaratory Judgment

Finally, Grossinger requests a declaratory judgment pursuant to 28 U.S.C. § 2201 (the Declaratory Judgment Act, or "DJA"). Specifically, he seeks a declaration that "the Agreement between the Parties is unenforceable as an unconscionable contract of adhesion. Alternatively, Grossinger requests that the Court construe the Agreements in such a way as to fairly represent a reasonable interpretation of the same by excluding the compound interest claimed by Farhangui." To the extent Grossinger's claim relies on his argument that the contract violated usury laws, law-of-the-case binds him to this Court's determination that such an argument fails. *See Pharmacy Benefit*, 582 F.3d at 439. Farhangui argues Grossinger's *only* basis for a declaratory judgment resides in this usury allegation, and that "nowhere does the Counterclaim set forth Grossinger's interpretation of the late payment provision, or the specific declaration he seeks." But the Counterclaim belies this argument—Grossinger specifically requests a declaration that the "Court construe the Agreements [as to] exclude[e] the compound interest" Farhangui requests. Such an issue reflects a live controversy between the parties—indeed, this Court previously noted that this provision "may be ambiguous" as to whether it requires compound or simple interest, *Grossinger*, 2020 WL 4334902 at *2—and thus may be appropriate for resolution through the DJA. *See Steffel v. Thompson*, 515 U.S. 452, 458 (1974). Nor does Farhangui provide any other basis on which the DJA claim is impermissible. Thus, to the extent the request for a declaratory judgment rests on a basis other than the usury arguments, Farhangui's motion shall be denied.

For the foregoing reasons, Farhangui's Motion to Dismiss shall be granted in part and denied in part.

An appropriate order follows.[4]

August 28, 2020                                    BY THE COURT:

                                                   /s/Wendy Beetlestone, J.

                                                   _____
                                                   **WENDY BEETLESTONE**

---

[4] Although courts should freely grant leave to amend "when justice so requires, . . . a court may deny leave to amend when such amendment would be futile." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014) (internal quotations omitted). "Amendment would be futile if the amended complaint would not survive a motion to dismiss for failure to state a claim." *Id.* Given that Grossinger has already argued the nature of his claims before this Court and had the benefit of an opinion considering his previous claims, and based on the requirements to state a plausible claim for the counterclaims he brings, amendment would be futile.

9